## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| John Lawrence Barfield, | ) | 8:20-CV-02388-DCN-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Defendants' Memorandum in** |
| | ) | **Support of Summary Judgment** |
| Michael Nunn, *Major*, | ) | |
| Teressa Cunningham, *Administration*, | ) | |
| Felisha Wilson, *RN*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants, by and through the undersigned legal counsel, do hereby submit the following memorandum in support of their contemporaneously filed motion for summary judgment. The legal basis for the Defendants' motion for summary judgment is that there exists no genuine issue of material fact for trial and that they are entitled to summary dismissal of all claims brought against them.

### Relevant Factual Background

At all times relevant hereto Plaintiff is/was a pretrial detainee being held at the Florence County Detention Center ("FCDC") awaiting trial relating to charges of Robbery/Armed Robbery, Robbery while armed or allegedly armed with a deadly weapon and Assault and Battery of a High and Aggravated Nature. Defendants Cunningham and Nunn were/are undeniably employees with the Florence County Sheriff's Office during the relevant time period (Cunningham Aff. ¶ 2; Nunn Aff. ¶ 2). Defendant Wilson was a Nurse at the Florence County Detention Center during the relevant time period (Wilson Aff. ¶ 2).

As alleged, Plaintiff claims that:

I have been denied medical treatment for my chronic condition. By the medical and
the administration at Florence County Detention Center.
(Doc. # 1, p. 5).

Plaintiff further alleges that:

I have been diagnosed with Hepatitis C.[1] I have ask [sic] medical staff and
administrative personel [sic] to treat me for this chronic condition and have been
denied.

(Doc. # 1-4, p. 1).

Plaintiff's claims are brought against the Defendants pursuant to 42 U.S.C. § 1983 (Doc. # 1). The

Defendants deny all such allegations. The Defendants have also now moved for summary

judgment. This memorandum is submitted in support thereof.

## **Standard of Review**

The Court shall grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is

appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth

specific facts showing that there is a genuine issue for trial. *See* Celotex Corp. v. Catrett, 477 U.S.

317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If a movant asserts that a fact cannot be

disputed, it must support that assertion either by "citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or

---

[1] Hepatitis C is a liver infection caused by the Hepatitis C virus ("HCV"). Hepatitis C is spread through contact with
blood from an infected person. Today, most people become infected with the hepatitis C virus by sharing needles or
other equipment used to prepare and inject drugs.

*See*, https://www.cdc.gov/hepatitis/hcv/index.htm

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990).


## Analysis

1. 42 U.S.C. § 1983 Claims.

In order to state a viable claim pursuant to 42 U.S.C. § 1983, Plaintiff must prove (1) that he "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); *see also* Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct.

1920, 64 L. Ed. 2d 572 (1983); Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980). In a § 1983 action, "liability is personal, based upon each Defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001).

As a pretrial detainee, Plaintiff's claims are analyzed through the lens of the due process clause of the Fourteenth Amendment. "[A] pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992). However, not every hardship encountered during pretrial detention amounts to "punishment" in the constitutional sense. Hill, 979 F.2d at 991. The fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into punishment. Bell v. Wolfish, 441 U.S. 520, 537, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). In any event, "pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001) (citing City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 243-44, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983) and Hill, 979 F.2d at 991-92). Therefore, the standards applied in Eighth Amendment conditions of confinement cases are essentially the same as those in cases arising under the Fourteenth Amendment for pretrial detainees. *See* Hill, 979 F.2d at 991; Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citations omitted).

A.    *Deliberate Indifference to Serious Medical Needs.*

Initially, Plaintiff's completely and utterly fails to allege/prove that the Defendants deprived him of a right, privilege or immunity secured by the Constitution or laws of the United States, and/or that "that the conduct complained of was committed by [the Defendants] acting

under color of state law." Indeed, Plaintiff's Complaint fails to sufficiently allege that these Defendants were personally responsible for anything. Rather, Plaintiff's Complaint alleges that "medical" and/or "administration" allegedly violated his constitutional rights (Doc. # 1). No genuine issue of material fact exists in this regard. For this reason, summary judgment in favor of these Defendants is appropriate.

Additionally, Plaintiff's claims that the Defendants were somehow indifferent or interfered with his alleged "serious medical needs" is also without legal merit. No genuine issue of material fact exists in this regard. For this reason, summary judgment in favor of these Defendants is also appropriate.

In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." <u>Id</u>. (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976)). The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met…We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

> <u>Estelle</u>, 429 U.S. at 103-105 (citations and footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the Court was careful to note that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional

violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Fourth Circuit Court of Appeals has also considered this precise issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness,… nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851 (citations omitted). Unless medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the Plaintiff may not prevail. Estelle, 429 U.S. at 102-103; Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Here, Plaintiff undeniably has not demonstrated a claim of deliberate indifference to his serious medical needs against the Defendants. Plaintiff's medical records undeniably reveal that the Plaintiff has been seen and treated by medical personnel on numerous occasions related to his medical conditions (Wilson Aff ¶ 4; Ex. 1 – Medical Records). No genuine issue of material fact exists in this regard. Although Plaintiff may allege that he has not been provided the constitutionally required level of medical care, the undisputed record clearly reflects otherwise. Indeed, Plaintiff admits in his Complaint that he has been provided medical care and that he is being provided seven (7) different pills for his various medical conditions (Doc. # 1). Unfortunately, although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. Thomas v. Anderson City Jail, No. 6:10-3270-RMG-KFM, 2011 U.S. Dist. LEXIS 12532, 2011 WL 442053 (D.S.C. Jan. 19, 2011); Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although

the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See,* Brown v. Thompson, 868 F. Supp. 326 (S.D. Ga. 1994). Although Plaintiff may disagree with the amount or types of treatment he received, such allegations do not constitute a constitutional deprivation under these circumstances. To the contrary, commencing Plaintiff's treatment for Hepatitis C was not medically advisable, since pretrial detainees can be transferred or released at any time from the FCDC (Wilson Aff. ¶ 6). Thus, there can be no basis to conclude that there was medical indifference to the Plaintiff, especially where a county jail is involved and/or a pretrial detainee's continuous and complete courses of treatment for Hepatitis C cannot be guaranteed (Wilson Aff. ¶ 6). No genuine issue of material fact exists in this regard. Rather, "considered[ed] decision[s] by medical professionals to delay or forego treatment for an inmate's nonacute Hepatitis C [undeniably] does not amount to deliberate indifference, especially where a county jail is involved and/or continuous and complete courses of treatment cannot be guaranteed." Davenport v. Perry, 2020 U.S. Dist. LEXIS 115852 (D.S.C. July 1, 2020) (holding that there is no basis to conclude that there was medical indifference to the Plaintiff, especially where a county jail is involved and/or a pretrial detainees continuous and complete courses of treatment for Hepatitis C cannot be guaranteed); Crigger v. Wright, 2016 U.S. Dist. LEXIS 53904, 2016 WL 1626580 (E.D. Va. 2016) (summary judgment granted to medical care provider who determined that commencing treatment to detainee who could be transferred or released at any time was not medically advisable); Chamberlain v. Russell, 2014 U.S. Dist. LEXIS 26863, 2014 WL 824009 (W.D. Va. 2014) (medical care provider's decision not to treat prisoner's Hepatitis C was not indicative of deliberate indifference). For this reason, summary judgment in favor of these Defendants is also appropriate.

Likewise, Defendants Cunningham and Nunn were not personally connected to the medical care/treatment that the Plaintiff received, did not have actual knowledge and disregard a substantial risk of serious injury to the Plaintiff resulting from the alleged lack of medical care, and did not interfere with the Plaintiff's medical treatment (Cunningham Aff. ¶ 6; Nunn Aff. ¶ 6). Defendants Cunningham and Nunn were not personally responsible for administering medical treatment/medication to the Plaintiff (Cunningham Aff. ¶ 5; Nunn Aff.¶ 5). While non-medical personnel may be liable for medical indifference if they "were personally involved in a denial of treatment, deliberately interfered with treatment, or tacitly authorized or were indifferent to a prison physician's misconduct," Estelle, 429 U.S. at 104-05, no such evidence exists in this case. In fact, there is no evidence that Defendants Cunningham and Nunn had any involvement whatsoever in the Plaintiff's medical care (Cunningham Aff. ¶ 5; Nunn Aff.¶ 5). The Defendants also did not in any way interfere with the medical treatment of the Plaintiff (Cunningham Aff. ¶ 6; Nunn Aff.¶ 6). Accordingly, summary judgment is also appropriate on Plaintiff's medical indifference cause of action, if any.

Moreover, Defendant Wilson was a Nurse at the FCDC during the relevant time period who provided medical care to both pretrial detainees and inmates (Wilson Aff. ¶ 2). According to Defendant Wilson, the Plaintiff has been seen and treated by medical on multiple occasions (Wilson Aff. ¶ 4). Plaintiff is also now desirous of a specific course of treatment for his Hepatitis C, which is not needed and/or preferred (Hatchell Aff. ¶ 6).[2] The Plaintiff's Hepatitis-C is non-emergent and additional treatment is not necessary at this time (Wilson Aff. ¶ 6). Plaintiff's Hepatitis-C is also not an objectively serious medical condition necessitating additional treatment at this time (Wilson Aff. ¶ 6). Again, the type and amount of medical care the Plaintiff has and/or

---

[2]Plaintiff does not allege in his Complaint what specific, additional medical treatment he desires, other than to say he wants "a regimen of pills that can be easily obtained" (Doc. # 1-4, p. 1).

will receive is discretionary and is not for the Plaintiff to order (Wilson Aff. ¶ 6). None of the Defendants was seriously indifferent to the Plaintiff's medical needs (Wislon Aff. ¶ 7). For this reason, summary judgment in favor of the Defendants is also appropriate.

Furthermore, Plaintiff also states no constitutional claim regarding the amount of money to be charged against his inmate account for the medical treatment provided to him at the FCDC. In fact, no Defendant denied the Plaintiff medical treatment for any serious medical needs, based on an ability to pay (Cunningham Aff. ¶ 5; Nunn Aff. ¶ 5; Wilson Aff. ¶ 7). Thus, as long as officials do not deny treatment of serious medical needs based on an inmate's inability to pay for the costs of treatment, the Constitution does not prevent them from charging some or all of the expense for the treatment to the inmate's trust account for future payment. Cheruk v. Southwest Reg'l Jail Auth. "Med.", 2009 U.S. Dist. LEXIS 73898 (W.D.Va. Aug. 20. 2009); Shapley v. Nevada Board of State Prison Commissioners, 766 F.2d 404, 408 (9th Cir. 1985); Reynolds v. Wagner, 936 F. Supp. 1216, 1223 (E.D. Pa. 1996) ("although the government must provide medical care, the Supreme Court has never held the government must pay for it"); Bihms v. Klevenhagen, 928 F. Supp. 717, 718 (S.D. Tex. 1996) ("If the inmate can pay for his medical care, then the state may require reimbursement."). The allocation of the cost of the medical care is a matter of state law. City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 245, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983). In South Carolina, the South Carolina Legislature has not enacted a statute explicitly requiring governmental entities to pay for detainee medical care. For this reason, summary judgment in favor of the Defendants is also appropriate.

B.      Unlawful Conditions of Confinement.

Next, to the extent that the Defendants are alleged to have subjected the Plaintiff to unlawful conditions of confinement, all such claims also fail as a matter of law. No genuine issue

of material fact exists in this regard. For this reason, summary judgment in favor of these Defendants is also appropriate.

Importantly, the Plaintiff must realize that he himself was responsible for his being placed in a county jail, where conditions are oftentimes less than ideal. *See* Hadley v. Peters, No. 94-1207, 1995 U.S. App. LEXIS 31941, 1995 WL 675990 * 8 (7th Cir. 1995), *cert. denied*, 517 U.S. 1111, 116 S. Ct. 1333, 134 L. Ed. 2d 484 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988)). Likewise, the Plaintiff's constitutional rights cannot be violated absent some evidence to support such a claim. Hagans v. Lavine, 415 U.S. 528, 536-537, 94 S. Ct. 1372, 39 L. Ed. 2d 577 (1974) [federal courts should not entertain claims that are "so attenuated and unsubstantial as to be absolutely devoid of merit"]; White v. White, 886 F.2d 721, 723 (4th Cir. 1989) [Dismissal of suit proper where Plaintiff's Complaint "failed to contain any factual allegations tending to supporting his bare assertion"]; cf. Griffin v. DeRosa, 153 Fed. Appx. 851, 852-853 (3rd Cir. Nov. 3, 2005) [finding plaintiff's allegations insufficient to show that prison officials were deliberately indifferent to prisoner's health or safety, as required to state Eighth Amendment claim for failure to protect].

As a pretrial detainee, Plaintiff has a due process right against conditions that amount to punishment. Bell v. Wolfish, 441 U.S. 520, 535-38, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." Martin v. Gentile, 849 F.2d 863, 870 (4th Cir.1988) (citing Bell, 441 U.S. at 538-40). Prohibited punishments include those which "involve

the unnecessary and wanton infliction of pain." <u>Estelle v. Gamble</u>, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976)). As a practical matter, the analysis under the due process clause and the analysis under the Eighth Amendment is materially indistinguishable. *See, e.g.,* <u>Hill v. Nicodemus</u>, 979 F.2d 987, 991-92 (4th Cir.1992). In order to make out a prima facie case that prison conditions violate the Eighth Amendment, Plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials. <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir.1993) (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). The first prong is an objective one—the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious"—and the second prong is subjective—the prisoner must show that "subjectively the officials act[ed] with a sufficiently culpable state of mind." <u>Strickler</u>, 989 F.2d at 1379 (internal quotations omitted).

To establish the objective prong of a prison conditions claim, an inmate or detainee must establish that he received an injury. <u>Id</u>. at p. 1381. In particular, "[o]nly an extreme deprivation, that is, a 'serious or significant physical or emotional injury resulting from the challenged conditions,' or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim challenging the conditions of confinement." <u>De'lonta v. Johnson</u>, 708 F.3d 520, 525 (4th Cir. 2013).

As for the second prong of the test, an inmate or detainee must establish that the defendant acted with a sufficiently culpable state of mind-that of deliberate indifference. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "Deliberate indifference entails something more than mere negligence, ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." <u>Id</u>. at 835. It

requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir.1995). Prison officials cannot be held liable unless they knew of and disregarded an excessive risk to inmates' health or safety. Farmer, 511 U.S. at 834.

In this case, Plaintiff undeniably cannot establish that these Defendants acted with deliberate indifference to the alleged unlawful conditions of confinement and/or that he received any serious injury whatsoever. For instance, the Defendants vehemently deny that they knew of and/or disregarded any objectively serious condition, medical need, or risk of harm to the Plaintiff (Cunningham Aff. ¶ 7; Nunn Aff. ¶ 7; Wilson Aff. ¶ 8). The Defendants also did not interfere in the Plaintiff's medical treatment (Cunningham Aff. ¶ 6; Nunn Aff. ¶ 6; Wilson Aff. ¶ 8). Again, Plaintiff undeniably has received prompt and extensive medical care. No expert medical evidence has been presented to this Court by the Plaintiff that any injuries were caused by these Defendants and/or that they resulted from serious medical needs. The conditions of Plaintiff's confinement were also not unlawful (Cunningham Aff. ¶ 8; Nunn Aff. ¶ 8; Wilson Aff. ¶ 8). Without being trained medical care professionals, Defendants Nunn and Cunningham relied on the medical care providers who provided care to the Plaintiff and they believed that medical care to be appropriate (Cunningham Aff. ¶ 5; Nunn Aff.¶ 5). Nothing in the record suggests in any way that the conditions complained of by the Plaintiff violate contemporary standards of decency. Gallishaw v. Reed, No. 9:09-2566-CMC-BM, 2010 U.S. Dist. LEXIS 62919, 2010 WL 2622931 (D.S.C. May 28, 2010) ("During the time period set forth in the complaint, Plaintiff was a prisoner in a state correctional facility, not a hotel. It should be expected that conditions in such a setting are oftentimes less than ideal.") (citations omitted), aff'd, 397 F. App'x 852 (4th Cir. 2010); Harris v. Fleming, 839 F.2d 1232, 1236 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a

good hotel."). No genuine issue of material fact exists in these regards. For this summary judgment in favor of these Defendants is also appropriate.

Plaintiff's general and conclusory allegations about the conditions of his confinement, if any, are also simply insufficient standing alone without any supporting evidence to create a genuine issue of fact as to whether his constitutional rights have been violated. House v. New Castle Co., 824 F. Supp. 477, 485 (D.M.D. 1993)[Plaintiff's conclusory allegations insufficient to maintain claim]; Wilson, 878 F. Supp. at 1167-1168 [pretrial detainee failed to establish that conditions in detention facility violated his due process rights, as detainee failed to allege remedial injury]; Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988)[prisoner deprived of toilet paper, soap, toothpaste and toothbrush while kept in filthy, roach infested cell suffered no punishment when no physical harm resulted]; Chavis v. Fairman, No. 94-1503, 1995 U.S. App. LEXIS 7916, 1995 WL 156599 at **5-6 (7th Cir. Apr. 6, 1995)["Generally, even dramatic restrictions on outdoor exercise do not violate the Eighth Amendment . . . so long as prisoners have ample opportunity to enjoy indoor activity."]; Stewart v. McGinnis, 800 F. Supp. 604, 1995 WL 156599 at * 5 (N.D.Ill. 1992)[although inmates were not permitted to exercise outdoors during an 85-day lock down period, they were allowed to leave their cells, use the day room, and generally move about the prison, thus undercutting Plaintiff's constitutional claims], aff'd, 5 F.3d 1031 (7th Cir. 1993); Farmer, 114 S.Ct. at 1979 [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; Kidwell v. Buchanan, No. 93-15056, 1993 U.S. App. LEXIS 16216,

1993 WL 230224 at **1 (9ᵗʰ Cir. June 29, 1993) [Where temporary restriction of amenities was found not to be cruel and unusual punishment]; <u>Harris v. Murray</u>, 761 F. Supp. 409, 415 (E.D.Va. 1990) ["Plaintiff does not state a constitutional claim for inadequate nutrition merely because there were occasions when plaintiff considered his food inedible or inadequately warmed."]; <u>Waring v. Meachum</u>, 175 F. Supp.2d 230, 239 (D. Conn. 2001) [cold diet without fruits and vegetables for a short time period not a constitutional violation]. For this reason, summary judgment in favor of the Defendants is also appropriate.

Plaintiff's claims about the conditions of his confinement, if any, also fail for the simple reason that he has submitted no evidence whatsoever to establish a claim of a constitutional violation. Specifically, Plaintiff has provided no evidence to show what his conditions were in any way unlawful, based upon his alleged treatment of a serious medical need. <u>Baber</u>, 977 F.2d at 874-75 [To survive a motion for summary judgment, the opposing party must respond to the motion with evidence showing there is a genuine issue for trial]. Rather, the Plaintiff just makes general and conclusory allegations and observations about these issues, without offering any actual evidence to show the existence of any deprivation of a constitutional magnitude. <u>Drakeford v. Thompson</u>, 2010 U.S. Dist. LEXIS 124857, 2010 WL 4884897 at * 3 (D.S.C. November 24, 2010), citing <u>Larkin v. Perkins</u>, 22 Fed. Appx. 114, 115 (4ᵗʰ Cir. 2001) [Noting that non-movant's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation,…[is] insufficient to stave off summary judgment"]; <u>Johnson v. Reno Police Chief</u>, 718 F. Supp. 36, 38 (D.Nd. 1989)["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven, would entitle the plaintiff to relief"]; <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; <u>House v. New Castle County</u>, 824 F. Supp. 477, 485

(D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]. For this reason, summary judgment in favor of these Defendants is also appropriate.

C.     *Official Capacity Claims.*

To the extent that these Defendants are being sued in their official capacities, any such claims also fail as a matter of law. No genuine issue of material fact exists in this regard. For this reason, summary judgment in favor of these Defendants is also appropriate.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." Will v. Michigan Dep't of State Police, 491 U.S. 58, 70, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); Regents of the Univ. of California v. Doe, 519 U.S. 425, 429, 117 S. Ct. 900, 137 L. Ed. 2d 55 (1997) ("[I]t has long been settled that the reference[in the Eleventh Amendment] to actions against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). Here, these Defendants were undeniably sheriff/deputy sheriff's, employees and/or medical care providers with the Florence County Sheriff's Office (Cunningham Aff. ¶ 2; Nunn Aff. ¶ 2; Wilson Aff. ¶ 2). As an arm of the state, these Defendants are entitled to sovereign immunity and cannot constitute a "person" under § 1983 in that capacity. Will, 491 U.S. at 70-71; Gulledge v. Smart, 691 F. Supp. 947, 954-55 (D.S.C. 1988) (concluding that sheriffs and deputy sheriffs are agents of the state and cannot be sued in their official capacities). Accordingly, to the extent these Defendants are sued in their official capacity, they are immune from suit. Will, 491 U.S. at 70-71; Quern v. Jordan, 440 U.S. 332, 343, 99 S. Ct. 1139,

59 L. Ed. 2d 358 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations). No genuine issue of material fact exists in this regard. For this reason, summary judgment in favor of the Defendants is also appropriate.

D.    *No Respondeat Superior Liability.*

To the extent that the Defendants, are being sued in any supervisory capacity, they also cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior basis. In particular, liability cannot be imposed on a Defendant on the basis of actions taken by other officials or employees. No genuine issue of material fact exists in this regard. For this reason, summary judgment in favor of these Defendants is also appropriate.

It is well-settled that the doctrine of vicarious liability and the doctrine of respondeat superior are not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-29 (4th Cir. 1977); Polk County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ("Section 1983 will not support a claim based on a respondeat superior theory of liability.") (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Section 1983 liability on the part of a supervisory Defendant requires a showing that the supervisory Defendant tacitly authorized or was indifferent to the official's actions which violate constitutional rights. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). No such showing has been proffered to this Court.

In this case, Plaintiff may be attempting to allege that some of the Defendants may be responsible as a supervisor. However, as explained above, the Defendants cannot be held liable on any theory of vicarious liability and/or respondeat superior.  The Defendants also were not deliberately indifferent to any civil and/or constitutional rights of the Plaintiff. No civil and/or

constitutional rights of the Plaintiff were ever violated by anyone. No genuine issue of material fact exists in these regards. Therefore, the Defendants cannot be held liable under 42 U.S.C. § 1983. Again, no genuine issue of material fact exists in this regard. For this reason, summary judgment in favor of the Defendants is also appropriate.

F.      *Qualified Immunity*

Moreover, even if the Defendants somehow violated the Plaintiff's civil and/or constitutional rights, which is vehemently denied, the Plaintiff's claims must still be summarily dismissed because the Defendants are entitled to qualified immunity. No genuine issue of material fact exists in this regard. For this reason, summary judgment in favor of these Defendants is also appropriate.

Qualified immunity is immunity from suit rather than merely a defense to liability. <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009). "[Q]ualified immunity shields government officials performing discretionary functions from civil liability insofar as their conduct 'does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known.' " <u>Johnson v. Garraghty</u>, 57 F. Supp. 321, 329 (E.D. Va. 1999) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817 (1982)). In determining whether or not to apply qualified immunity in a § 1983 suit, courts look to the two-prong test set forth in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001). Under <u>Saucier</u>, the court must decide (1) whether facts alleged or shown by Plaintiff make out a violation of the constitutional right; and, (2) if so, whether that right was clearly established at the time of defendant's alleged misconduct. <u>Id</u>. Under the first prong, if the answer is, "no, the officer's conduct did not violate the person's Constitutional rights," then the inquiry ends and qualified immunity bars the litigation from proceeding. When the first prong is satisfied, then the inquiry turns to the

second prong. Under the second prong of <u>Saucier</u>, the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id</u>. at 202.  Accordingly, the Court must determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a Constitutional right. <u>Id</u>. at 201. The inquiry involves an objectively reasonable test and is judged from the perspective of a reasonable officer on the scene. *See* <u>Kentucky v. Kind</u>, 131 S.Ct. 1849, 1859 (2011); <u>Graham v. Connor</u>, 490 U.S. 386 (1989). Ultimately, the legal issue is "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." <u>Elliot v. Leavitt</u>, 99 F.3d 640, 642 (4th Cir. 1996) (citing <u>Graham</u>, 490 U.S. at 397). Put differently, a "police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful." <u>Slattery v. Rizzo</u>, 939 F.2d 213, 216 (4th Cir. 1991) (quoting <u>Tennessee v. Garner</u>, 471 U.S. 1, 11 (1985)). The Court's inquiry is fact-specific and must be analyzed on a case-by-case basis.

In this case, qualified immunity is appropriate, since: (1) at the time of the alleged violation, the right was not clearly established; and (2) a reasonable person would not have known that doing what the undisputed record reflects would violate the Plaintiff's rights. No genuine issue of material fact exists in this regard. For this reason, summary judgment in favor of the Defendants is also appropriate.

Here, the Defendants also cannot be said to have knowingly violated the Plaintiff's constitutional rights, since the rights to which Plaintiff now complains were not clearly established, nor would a reasonable person have known that doing what is complained would violate the Plaintiff's rights. No genuine issue of material fact exists in this regard. Quite simply, the

individual Defendants cannot be held liable for "bad guesses in gray areas;" instead, they can only be liable for "transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992). Because no such "bright lines" were crossed by the individual Defendants in this case, liability is not possible. All government officials but the plainly incompetent or those who knowingly violate the law are protected by qualified immunity. Malley v. Briggs, 475 U.S. 335, 341 (1986). The Defendants were not incompetent, nor did they knowingly violate the Plaintiff's constitutional rights (Cunningham Aff. ¶ 12; Nunn Aff.¶ 12; Wilson Aff. ¶ 9). No genuine issue of material fact exists in this regard. Therefore, summary judgment in favor of the Defendants is appropriate.

2.      *Insufficiency of Service of Process.*

The Plaintiff also appears to have failed to effect proper service of the Summons and Complaint upon the Defendants.[3] No genuine issue of material fact exists in this regard. Therefore, this action is subject to summary dismissal for insufficiency of service of process pursuant Rules 12(b)(2), (4), and (5) of the Federal Rules of Civil Procedure.

Dismissal of an action against a Defendant for failure to effectuate timely service is addressed in Rule 4(m) of the Federal Rules of Civil Procedure, which establishes a time limit for service and provides, in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against...

> Fed.R.Civ.P. 4(m).

---

[3]It is unclear to the undersigned from the filed Process Receipts and Returns whether/how the Defendants were served with the Summons and Amended Complaint in this case, since they are illegible (Doc. # 28).

Similarly, a defendant may also assert a defense under Rule 12(b)(5) for "insufficient service of process," where service of process failed to comply with the requirements of Rule 4 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(b)(5). Rule 4(e) also governs the service of process upon individuals in the United States and provides that service may be accomplished by either (1) delivering a copy of the summons and complaint to the defendant personally, (2) leaving a copy of the summons and complaint with a person of suitable age and discretion then residing at the defendant's home or usual place of abode, or (3) delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process. Fed.R.Civ.P. 4(e). Rule 4(e) also provides that service of process may be accomplished pursuant to the law of the state in which the district court sits. Id.

In this case, Plaintiff appears to have failed to effect proper service upon these Defendants. Indeed, it is unclear whether/how the Defendants were allegedly served in this matter. Consequently, the Defendants were arguably not properly served. The Defendants timely and properly raised the defense of insufficiency of service in their Answer. Plaintiff has made no attempt to correct and/or amend his attempts at service of process. Thus, this action is subject to summary dismissal for insufficiency of service of process pursuant Rules 12(b)(2), (4), and (5) of the Federal Rules of Civil Procedure.

3.      *42 U.S.C. § 1997e(e).*

The Prison Litigation Reform Act ("the PLRA") also precludes the Plaintiff's recovery of damages in this case. In particular, the PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). Thus,

to bring suit under the PLRA, the Plaintiff must show either that he suffered a physical injury or that a sexual act occurred.

In the case at bar, Plaintiff has undeniably failed to establish any resulting physical injury from the matters complained of. No genuine issue of material fact exists in this regard. Indeed, while Plaintiff alleges that he may be suffering liver damage, no medical evidence whatsoever reflects that this is the case. Instead, the Plaintiff's hepatitis-C is undeniably non-emergent and additional medical treatment is not needed at this time. Plaintiff has not submitted any evidence to support a finding that he suffered any physical injury, other than his own self-serving, non-expert, speculative beliefs. For this reason, summary judgment in favor of the Defendants is also appropriate.

4.      *Exhaustion of Administrative Remedies.*

The Plaintiff has also failed to exhaust his administrative remedies in this case. No genuine issue of material fact exists in this regard. For this reason, summary judgment in favor of the Defendants is also appropriate.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Freeman v. Florence County Det. Ctr., 2013 U.S. Dist. LEXIS 51736 (D.S.C. March 21, 2013). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). To satisfy this requirement, Plaintiff must avail himself

of all available administrative review. Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). Those remedies "'need not meet federal standards', nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Further, pretrial detainees are also required to exhaust administrative remedies. See 42 U.S.C.A. 1997e(h) (defining "prisoner" for PLRA purposes as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."); Rutland v. Dewitt, C/A No. 8:09-13-SB, 2010 U.S. Dist. LEXIS 5993, 2010 WL 288217, *5 & n.1 (D.S.C. Jan. 25, 2010) (applying PLRA to pretrial detainee).

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[.]" Woodford v. Ngo, 548 U.S. 81, 89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) (quoting McCarthy v. Madigan, 503 U.S. 140, 145, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." Id. Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement. Freeman v. Florence County Det. Ctr., 2013 U.S. Dist. LEXIS 51736 (D.S.C. March 21, 2013). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so properly." Woodford, 548 U.S. at 90. Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

As recently explained in Freeman v. Florence County Det. Ctr., 2013 U.S. Dist. LEXIS 51736 (D.S.C. March 21, 2013), the Florence County Detention Center "has an inmate grievance

procedure in place that allows the inmates to grieve, to the administration, any issues they have concerning the conditions of their confinement." Id. The procedures provide that an inmate must complete a grievance form which "is taken to the appropriate person, depending on what the allegations are in the grievance." Id. The inmate can then appeal the initial findings to the Jail Manager. Id. Unfortunately for the Plaintiff, he has not availed himself of this required appeal process.

Notably, as reflected in the affidavit of Deputy Director of FCDC Captain Lynn Patton, the current proper procedure for the Plaintiff is to file a grievance related to those matters now complained of is complete an appropriate grievance form, which is then submitted by the inmate via a kiosk (Patton Aff. ¶s 5). Plaintiff did complete and submit the appropriate grievance(s) concerning his medical treatment (Patton Aff. ¶ 6).  An appropriate initial finding will then be made by an official delegated to respond, which was done (Patton Aff. ¶s 5-6). The inmate can then appeal those findings to the Detention Center Administrator, in writing, within typical grievance time deadlines not to exceed fifteen (15) days (Patton Aff. ¶ 5). The Detention Center Administrator or designee may then affirm or reverse the decision outright, return the decision for further proceedings or modify the sanction imposed. (Patton Aff. ¶ 5) A review of FCDC records reveals that the Plaintiff undeniably never appealed the matters at issue to the Detention Center Administrator, as is required (Patton Aff. ¶ 7). Accordingly, Plaintiff has not exhausted his administrative prerequisites prior to filing suit in this case (Patton Aff. ¶ 7). No genuine issue of material fact exists in this regard. For this reason, summary judgment in favor of these Defendants is also appropriate.

## **Conclusion**

In conclusion, these Defendants respectfully request that this Court grant their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, that the Plaintiff's claims against them be dismissed in their entirety, that judgment in their favor be granted, and that these Defendants be awarded their attorney's fees and costs in the successful defense of this frivolous action.

WILLCOX, BUYCK & WILLIAMS, P.A.

By:    <u>s/ J. Scott Kozacki</u>
       J. Scott Kozacki
       Fed. Bar No: 5456
       PO Box 1909
       Florence, SC 29503 1909 (843) 662 3258
       Tel (843) 662 3258
       skozacki@willcoxlaw.com
       ATTORNEY FOR DEFENDANTS

December 2, 2020
Florence, South Carolina